Michael McConnell
Texas Bar I.D. 13447300
michael.mcconnell@kellyhart.com
Nancy Ribaudo
Texas Bar I.D. 24026066
nancy.ribaudo@kellyhart.com
Katherine T. Hopkins
Texas Bar I.D. 24070737
katherine.hopkins@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: 817/332-2500
Telecopy: 817/878-9774

*Proposed Counsel for Debtors*

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SOVRANO, LLC, | § | CASE NO. 19-40067-11 |
| MR. GATTI'S, LP, | § | CASE NO. 19-40069-11 |
| GATTI'S GREAT PIZZA, INC., | § | CASE NO. 19-40070-11 |
| GIGI'S CUPCAKES, LLC, | § | CASE NO. 19-40072-11 |
| GIGI'S OPERATING, LLC, | § | CASE NO. 19-40073-11 |
| GIGI'S OPERATING II, LLC,[1] | § | CASE NO. 19-40074-11 |
| | § | |
| Debtors. | § | **(Joint Administration Requested)** |
| | § | |
| | § | **Emergency Hearing Requested** |

## JOINT EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL OF EQUITY BANK, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) SETTING A FINAL HEARING

Sovrano, LLC, Mr. Gatti's, LP, Gatti's Great Pizza, Inc., Gigi's Cupcakes, LLC and

Gigi's Operating, LLC (each a "<u>Debtor</u>" and collectively, the "<u>Debtors</u>")[2] move the Court for entry

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sovrano, LLC (1470); Mr. Gatti's, LP (0879); Gatti's Great Pizza, Inc. (6061); Gigi's Cupcakes, LLC (8356); Gigi's Operating, LLC (0621); and Gigi's Operating II, LLC (8396).

[2]  For purposes of this Motion, the term "<u>Debtors</u>" does not include Gigi's Operating II, LLC.

of interim and final orders pursuant to §§ 361, 362, 363, and 507 of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*, as amended, the "Bankruptcy Code") and Rules 4001, 6004(h), and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) authorizing Debtors to use cash collateral of Equity Bank, under the terms and conditions set forth herein; (ii) granting adequate protection; (iii) modifying the automatic stay to the extent necessary to implement the relief requested herein; and (iv) scheduling a final hearing with respect to the relief requested herein (the "Final Hearing"). In support, Debtors show:

## I. JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory and legal predicates for the relief requested herein are §§ 361, 362, 363 and 507 of the Bankruptcy Code and Bankruptcy Rules 4001, 6004(h) and 9014.

## II. BACKGROUND

### A. General Procedural Background

3. On this date, Sovrano, LLC ("Sovrano"), Mr. Gatti's, LP ("Mr. Gatti's"), Gatti's Great Pizza, Inc. ("Gatti's Great Pizza") (collectively, "Gatti's"), Gigi's Cupcakes, LLC ("Gigi's Cupcakes"), Gigi's Operating, LLC ("Gigi's Operating"), and Gigi's Operating II, LLC ("Gigi's Operating II") (collectively, "Gigi's") each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The debtors continue to manage and operate their businesses as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. A motion for joint administration of the estates has been filed.

4. No trustee or examiner has been appointed in these bankruptcy cases. No official committee of unsecured creditors has been appointed.

**B. Business Overview**

5. Gatti's restaurants are family-oriented pizza restaurants and entertainment facilities. Gatti's operates restaurants and offers franchise opportunities for its Mr. Gatti's buffet style restaurants. Gigi's stores are bakery shops offering a variety of upscale cupcakes baked onsite, prepared and packaged specifically for delivery, take-out and onsite consumption.

6. A detailed factual background of the Debtors' business and operations and the events leading up to the commencement of these Chapter 11 cases is more fully set forth in the *Declaration of Dawn M. Ragan, Chief Restructuring Officer, in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "Declaration"). The Declaration is being filed contemporaneously with this Motion and is incorporated herein by reference.

**C. Prepetition Indebtedness**

7. Prior to the Petition Date, certain of the Debtors granted prepetition liens and security interest to Equity Bank, including cash collateral, under the following documents (collectively "Equity Bank Loan Documents" or "Credit Agreement"):

- That certain Term Loan Agreement, dated June 28, 2018, and Term Note in the amount of $20,250,000, by and between Equity Bank, as lender, and Sovrano and Mr. Gatti's, LP, as borrowers;

- That certain Security Agreement, dated as of June 28, 2018, by and between Equity Bank and Sovrano;

- That certain Security Agreement, dated as of June 28, 2018, by and between Equity Bank and Mr. Gatti's, L.P.;

- That certain Security Agreement, dated as of June 28, 2018, by and between Equity Bank and Gatti's Great Pizza, Inc.;

- That certain Term Loan Agreement, dated June 28, 2018, and Term Note in the amount of $9,250,000, by between Equity Bank, as lender and Gigi's Cupcakes, LLC and Gigi's Operating, LLC, as borrowers;

- That certain Security Agreement, dated as of June 28, 2018, by and between Equity Bank and Gigi's Cupcakes, LLC; and

- That certain Security Agreement, dated as of June 28, 2018, by and between Equity Bank and Gigi's Operating, LLC

8. To secure each of the Equity Bank Loan Documents, each respective Debtor granted Equity Bank security interests (collectively, the "Pre-Petition Liens") in personal property as defined in the security agreements between Equity Bank and each Debtor (collectively, the "Pre-Petition Collateral"), including certain cash collateral ("Cash Collateral").

9. In addition, certain of the Debtors also entered into loan agreements and security agreements with Happy State Bank and JP Morgan Chase Bank, N.A., with respect to certain equipment loans, secured by certain property and equipment specified below. Specifically, Debtors entered into the following:

- That certain Loan Agreement, dated March 23, 2017, and Promissory Note in the amount of $340,000, by and between Happy State Bank, as lender, and Gigi's Operating, LLC, and Gigi's Operating II, LLC, as borrowers.

- That certain Security Agreements dated March 23, 2017, by and between Happy State Bank and Gigi's Operating, LLC, with respect to certain property located at Gigi's Southlake, TX store location; and

- That certain Security Agreements dated March 23, 2017, by and between Happy State Bank and Gigi's Operating II, LLC, with respect to certain property located at Gigi's Knoxville, Tennessee store location.

- That certain Loan and Security Agreement, dated July 13, 2016, and Interim Promissory Note in the maximum amount of $2,500,000, by and among JPMorgan Chase Bank, N.A. as lender, and Sovrano, LLC, as borrower and granting a security interest in certain equipment and property located at certain stores; and

- That certain Security Agreement, dated July 28, 2016, by and between JP Morgan Chase Bank, N.A. and Gatti's Great Pizza, Inc., granting a security interest in certain equipment and property located at certain stores.

**D.      Need for Use of Cash Collateral**

10.      Debtors need immediate access to its cash to pay employees and to pay for ordinary operational expenses.  If Debtors are unable to pay employees and pay for continuing operating expenses, their ability to effectively reorganize will be jeopardized.

### III.      <u>REQUESTED RELIEF</u>

11.      By this Motion, the Debtors respectfully request authorization and approval, pursuant to §§ 361, 362, 363, and 507 of the Bankruptcy Code and Bankruptcy Rules 4001, 6004(h) and 9014 to use Cash Collateral of Equity Bank on an interim basis in accordance with the proposed interim order attached hereto as **Exhibit C** (such order, the "<u>Proposed Interim Cash Collateral Order</u>" and "<u>Interim Order</u>") and, after the Final Hearing on this Motion, to use Cash Collateral in accordance with a final order in substantially the form of the Proposed Interim Cash Collateral Order (such order, the "<u>Final Cash Collateral Order</u>"), to pay expenses in accordance with the proposed budget attached as **Exhibits A and B** (the "<u>Budget</u>") (including any permitted variances).

12.      Without use of cash collateral, Debtors lack sufficient liquidity to meet ongoing obligations and will be unable to continue operations throughout these cases.  Debtors intend to use cash collateral to fund  payroll and operating expenses.  Debtors' estates will be immediately and irreparably harmed absent approval of the use of cash collateral.

13.      Debtors request that an interim hearing (the "<u>Interim Hearing</u>") to consider entry of the Interim Cash Collateral Order be set at the Court's earliest convenience following the Petition Date.  Debtors further request that a final hearing be set pursuant to Bankruptcy Rule 4001(c)(2) (the "<u>Final Hearing</u>") to consider entry of the Final Order.

### IV. STATEMENT PURSUANT TO BANKRUPTCY RULE 4001(B)(1)(b)

14. A summary of the proposed material terms of the use of Cash Collateral include the following[3]:

**A. Stipulations:** Paragraph I of the Proposed Interim Cash Collateral Order provides that the Debtors will stipulate and agree to the following:

1. <u>Credit Agreement</u>. Various loan agreements, promissory notes, security agreements, related loan documents and guaranties between and among Equity Bank and Debtors as specifically set forth in the Proposed Interim Cash Collateral Order and collectively referred to as the "Credit Agreement."

2. Various loan agreements, notes, security agreements and other related loan documents entered into by and between JPMorgan Chase Bank, N.A., Happy State Bank and various Debtors and/or Gigi's Operating II, LLC, as specifically set forth in the Proposed Interim Cash Collateral Order

3. Pursuant to the Credit Agreement, Equity Bank provided certain credit facilities to finance the Debtors' businesses by making advances, in each case on the terms and conditions of the Credit Agreement. All "Obligations" (as such term is defined in the Credit Agreement) owed to Equity Bank under the Credit Agreement and the other loan documents ( "Pre-Petition Obligations") are alleged by Equity Bank to be not less than:

| Debtor | Principal as of 12/31/18 | Accrued and Unpaid Interest as of 1/3/2019 | Late Charges as of 1/3/19 | Total Balance and Payoff as of 1/3/19 | Per diem interest from and after 1/3/19 |
|---|---|---|---|---|---|
| Gigi's Cupcakes, LLC | $9,006,962.60 | $188,516.42 | $21,722.10 | $9,217,201.12 | $2,063.6202 |
| Sovrano LLC, Gigi's Operating LLC; Great Gatti's Pizza Inc., Mr. Gatti's, LP | $19,254,509.61 | $313,681.16 | | $19,568,190.77 | $3,347.2360 |

In addition to the foregoing, as of January 2, 2019, Debtors Sovrano, LLC, Gigi's Operating, LLC, Gatti's Great Pizza Inc., and Mr. Gatti's, LP, failed to make a payment to Equity Bank in the amount of $882,400.08 and Debtor Gigi's Cupcakes, LLC failed to make a payment to Equity Bank in the amount of $434,183.16.

---

[3] The following summary and all other descriptions herein of the terms of the Proposed Interim Cash Collateral Order are provided for convenience only, and to the extent that the following summary and all other descriptions herein of the terms of the proposed Interim Cash Collateral Order are inconsistent, the terms of the Proposed Interim Cash Collateral Order shall control. Capitalized terms not described in the following summary shall have the meanings ascribed to below in this Motion.

4.     To secure payment of the Pre-Petition Obligations, the Debtors granted Equity Bank liens and security interests (collectively, the "Pre-Petition Liens") in personal property as defined in the security agreements between Equity Bank and each Debtor (collectively, the "Pre-Petition Collateral").

5.     The Pre-Petition Liens created by the Credit Agreement and any other loan documents are valid, binding, enforceable, properly perfected, non-avoidable, first priority liens on the Pre-Petition Collateral with priority over any and all other liens, security interests or other interests and are not subject to any challenge or defense, to the best of Debtors' knowledge, information and belief, including without, respectively, avoidance, reductions, set-off, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses or any other challenges of any kind under the Bankruptcy Code or any other applicable law or regulation by any person or entity.

6.     Subject to entry of a Final Order, Equity Bank shall be entitled to all of the rights and benefits of § 552(b) of the Bankruptcy Code, and the "equities of the case" exception under § 552(b) of the Bankruptcy Code shall not apply to Equity Bank with respect to proceeds, product, offspring or profits of any of the Pre-Petition Collateral.

7.     The Debtors waive, discharge and release any rights they may have to challenge the Pre-Petition Obligations and Pre-Petition Liens on the Pre-Petition Collateral, and to assert any offsets, set-offs, recoupments, defenses, claims, objections, causes of action and/or choses of action against Equity Bank with respect to the Pre-Petition Obligations, the Pre-Petition Liens or the Pre-Petition Collateral.

8.     The payments made on account of, and amounts applied to, the Pre-Petition Obligations before the Petition Date were payments and applications of Pre-Petition Collateral.

9.     All of the Debtors' cash, including the cash in its deposit accounts and other accounts, wherever located, to the extent it is original Pre-Petition Collateral or proceeds thereof, constitutes Cash Collateral of Equity Bank. "Cash Collateral" shall mean and include all "cash collateral," as defined in § 363 of the Bankruptcy Code, in or on which Equity Bank has a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests), and shall include, without limitation: (a) all cash proceeds arising from the collection, sale, lease, or other disposition, use or conversion of any of the Debtors' property, insurance policies, or in or on which Equity Bank has a lien or a replacement lien, whether as part of the Pre-Petition Collateral or pursuant to an order of this Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of this Case, or arose or was generated thereafter; (b) all of the respective deposits, refund claims and rights in retainers of the Debtors on which Equity Bank has a lien or replacement lien, whether as part of the Pre-Petition Collateral or pursuant to an order of this Court or applicable law or otherwise; and (c) the proceeds of any sale of Pre-Petition Collateral. Notwithstanding anything to the contrary, Cash Collateral shall not include any cash traceable to Gigi's Operating II, LLC (or any other non-debtor

entity) or cash subject to a valid and perfected lien, if any, held by Happy State Bank or JP Morgan Chase, N.A.

**B.** **Challenge Period:** Paragraph 15-17 of the Proposed Interim Cash Collateral Order provides that the Debtors' Stipulations shall be binding upon the Debtors, any trustee, and any party in interest, including the Committee (or if no Committee is formed, any party in interest granted standing by this Court prior to the expiration of the Challenge Period), unless the Committee (or such party in interest granted standing) commences, not later than the earlier of seventy-five (75) days following the Petition Date or sixty (60) days following the formation of the Committee, or such later date as Equity Bank agrees in writing to grant to such parties in interest (such time period shall be referred to as the "Challenge Period."

**C.** **Adequate Protection:** As adequate protection for the use of Equity Bank's Cash Collateral, Paragraph 10 of the Interim Order provides the following:

i.   <u>Replacement Liens</u>. Subject to any otherwise unavoidable and duly perfected liens existing on the Petition Date, Equity Bank is granted continuing, valid, automatically perfected nonavoidable and enforceable replacement liens (the "Replacement Liens"), in and upon all of the assets (and proceeds thereof) of the Debtors described in the Credit Agreement and the other loan documents including but not limited to, accounts receivable, and Cash Collateral, whether such property (or proceeds thereof) was owned on the Petition Date or acquired by any Debtor after the Petition Date (excluding all causes of action under chapter 5 of the Bankruptcy Code (the "Avoidance Actions"). The Replacement Liens: (a) are in addition to the Pre-Petition Liens; (b) are and shall be valid, perfected, enforceable, and effective as of the date of the entry of the Interim Order without further action by the Debtors or Equity Bank, and without the necessity of the execution, filing, or recordation of any financing statements, security agreements, mortgages, or other documents; (c) shall secure the payment of indebtedness to Equity Bank to the fullest extent of the law, of the Cash Collateral and any other Pre-Petition Collateral; and (d) except for *ad valorem* property taxes, shall not hereafter be subordinated to or made *pari passu* with any other lien or security interest arising after the Petition Date under Bankruptcy Code section 364(d) or otherwise, absent the consent of Equity Bank. The Replacement Liens shall have the same priority as existed on the Petition Date. If, however, Equity Bank, in its sole discretion, shall determine to file any such financing statements, mortgages, notices of lien or similar instruments, or to otherwise confirm perfection of such Replacement Liens, the automatic stay is lifted to allow the filing and recording of a certified copy of this Interim Order or any such financing statements, mortgages notices of lien or similar instruments, and all such documents shall be deemed to have been filed or recorded on the date of this Interim Order.

ii.   <u>Adequate Protection Superpriority Claims</u>. As further adequate protection of the interests of Equity Bank in the Pre-Petition Collateral against any diminution in value of such interests caused by a failure of adequate protection under § 507(b) of the Bankruptcy Code, Equity Bank is granted, subject to the Carve-Out, as and

to the extent provided by § 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each Debtor's Case and any Successor Cases (the "Adequate Protection Superpriority Claims").

iii. <u>Priority of the Adequate Protection Superpriority Claims</u>. The Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever; *provided, however*, that the Adequate Protection Superpriority Claims shall be subject to the Carve-Out. No Adequate Protection Liens shall attach to, and no Adequate Protection Superpriority Claims shall be recoverable from avoidance actions unless otherwise ordered by this Court.

iv. <u>Payment of Equity Bank Costs and Expenses</u>. All reasonable out-of-pocket costs and expenses of Equity Bank, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees and disbursements, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement obligations with respect to fees and expenses, and other out of pocket expenses, whether or not contained in the Budget and without limitation with respect to the dollar estimates contained in the Budget, shall be subject to a determination of secured status by the Court under § 506(a) of the Bankruptcy Code.

v. <u>Reporting</u>. Debtors shall timely provide Equity Bank, the Committee, if appointed, and the U.S. Trustee with (a) (i) a current accounts receivable ledger, (ii) a current accounts payable ledger (iii) a monthly report comparing actual collections and expenditures (by expense category) on a cash basis to those set forth in the Budget (a "Reconciliation Report"); and (iv) monthly financial statements to be delivered to Equity Bank not later than twenty (20) days after the conclusion of each month in which any Debtor uses Cash Collateral, (b) all documents and information submitted by Debtors to the United States Trustee, and (c) upon the reasonable request of Equity Bank, such other information pertaining to each Debtor's operations, financial affairs, and the Pre-Petition Collateral.

vi. <u>Access to Collateral</u>. Upon the request of Equity Bank, the Debtors shall permit Equity Bank, respectively, reasonable access to the Pre-Petition Collateral and each Debtor's books and records to conduct inspections and audits.

vii. <u>Successor Case</u>. The adequate protection granted to Equity Bank, including without limitation the Replacement liens, shall be enforceable against the Debtors, their estates, and any successors thereto, including without limitation, any trustee or other estate representative appointed in this Chapter 11 case, any case under Chapter 7 of the Bankruptcy Code upon a conversion, or in any other proceeding superseding or related to any of the foregoing.

viii.     <u>No Avoidance of Adequate Protection Payments or Replacement Liens</u>.  Subject to paragraphs 15 and 16 of the Interim Order, the payments to Equity Bank authorized in the Interim Order and the Replacement Liens shall not be subject to §§ 510, 549, or 550 of the Bankruptcy Code and shall not be subject to subordination, impairment, or avoidance for all purposes in this Case and any Successor Case.

**D.     Restrictions on Use of Cash Collateral:**  Paragraph 3 of the Interim Order provides that the Debtors are authorized to use Cash Collateral during the period from the Petition Date through and including the Termination Date subject to and solely in accordance with the terms, conditions, and limitations set forth in the Interim Order and the Budget, without further approval by this Court; *provided* that (a) all use of cash by the Debtors shall be deemed to be made first from any cash that is not Cash Collateral and thereafter from the Cash Collateral and (b) neither the Debtors nor any other party in interest (including any party in interest that is granted standing by this Court pursuant to paragraphs 15 and 16 of the Interim Order) shall be authorized to use the Cash Collateral for any purpose relating to or in furtherance of an Adverse Lender Action as defined in the Interim Cash Collateral Order, including without limitation the payment of professional fees relating to such matters.  The Budget may be modified provided that the Debtors obtain the written consent of Equity Bank, without further order of this Court, upon the filing of a copy of the modified Budget with the Court.  The Debtor's use of Cash Collateral may vary weekly by 10% on any line item basis (other than with respect to the amounts set forth in the Budget for taxes and utility expenses which the Debtors are authorized to pay in full in the amount reflected on any bill for taxes or utility services incurred).

**E.     Carve Out:**  Paragraph 4 of the Interim Order provides for a Carve-Out in an amount equal to the sum of (a) all fees required to be paid to the clerk of the Court or any claims and noticing agent acting in such capacity and to the Office of the U.S. Trustee under section 1930(a)(6) of title 28 of the United States Code and (b) allowed claims for unpaid fees, costs, and expenses (the "Allowed Fees") of the Debtors' professional fees to include Cash Collateral in the amount of: (i) $300,000 subject to Court approval under 11 U.S.C. § 330 for fees and expenses incurred by counsel for the Debtor (Kelly Hart LLP) and its restructuring advisor (CR3 Partners LLC) for services beginning on the Petition Date and rendered up through and including the earlier to occur of (x) the Termination Date and (y) entry by this Court of an additional interim or final order authorizing use of Cash Collateral, *providing that* the Carve-Out shall be reduced dollar-for-dollar by such Debtors' post-petition net cash deemed by the Court not to be proceeds of the Pre-Petition Collateral.

**F.     Termination on Use of Cash Collateral**.  Paragraph 12 provides that the Debtors' right to use Cash Collateral on a consensual basis shall terminate ("Termination Date") on the earliest of the following: (a) consummation of a plan of reorganization; (b) February 6, 2019, if the Final Order has not been entered by this Court on or before such date or such later date as Equity Bank may agree; or (c) in the event of a federal government shut-down which causes the unavailability of courts, two weeks from the end of such shut-down; or (d) upon written notice by Equity Bank to the Debtors after the occurrence and continuance of any of the following events ("Events of Default") beyond any applicable grace period:

(i)     Failure of the Debtors to comply in any material respect with the terms of the Interim Order and such failure continues without remedy for more than five (5) business days after written notice;

(ii)     Granting, creating, incurring or suffering to exist by any Debtor any liens or security interests other than: (A) those granted pursuant to the Interim Order; (B) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business for amounts outstanding as of the Petition Date, even if recorded after the Petition Date; (C) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (D) deposits to secure the payment of any post-petition statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business; and (E) any other liens or security interests that are junior to the Pre-Petition Liens and that a Debtor is permitted to incur under the Credit Agreement;

(iii)     Entry of any order reversing, amending, supplementing, staying, vacating or otherwise modifying the Interim Order without the written consent of Equity Bank.

(iv)     Entry of an order granting relief from the automatic stay to the holder or holders of any security interest (other than Equity Bank) to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any material assets of any Debtor;

(v)     From the Petition Date to the Termination Date, the creation of any claims or charges, or the entry of any order of this Court authorizing any claims or charges, other than as permitted under the Interim Order, entitled to superpriority under section 364(c)(1) of the Bankruptcy Code *pari passu* or senior to the Pre-Petition Obligations, or there shall arise or be granted by this Court (A) any claim having priority over any or all administrative expenses of the kind specified in clause (b) of section 503 or clause (b) of section 507 of the Bankruptcy Code, including the 507(b) Claims, or (B) any lien on the Pre-Petition Collateral or Post-Petition Collateral having a priority senior to or *pari passu* with the liens and security interests granted herein, except as expressly provided in the Credit Agreement or in this Interim Order (but only in the event specifically consented to by Equity Bank), whichever is in effect;

(vi)     Any filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the Pre-Petition Liens securing the Pre-Petition Obligations or asserting any other cause of action against and/or with respect to the Pre-Petition Obligations, the Pre-Petition Collateral, or Equity Bank (or if the Debtor supports any such motion, pleading, application or adversary proceeding commenced by any third party);

(vii)     Commencing, joining, assisting or otherwise participating as an adverse party by any Debtor or any of its subsidiaries or affiliates in any suit or other proceeding against Equity Bank relating to the Pre-Petition Obligations;

(viii)     Dismissing or converting this proceeding to a Chapter 7 case, or appointing a Chapter 11 Trustee with plenary powers, a responsible officer, or an examiner with enlarged powers relating to the operation of the businesses of the Debtors (powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code); *provided* that the appointment by the Court of a trustee or other fiduciary of any Debtor's estate for the limited purpose of investigating, commencing or prosecuting Avoidance Actions on behalf any Debtor's estate shall not constitute a default;

(ix)    Terminating or reducing by the Court the period pursuant to § 1121 of the Bankruptcy Code during which any Debtor has the exclusive right to file a plan or plans and solicit acceptances thereof.

**G.    Waivers:**  In the stipulations, Debtors waive, discharge and release any rights they may have to challenge the Pre-Petition Obligations and Pre-Petition Liens on the Pre-Petition Collateral, and to assert any offsets, set-offs, recoupments, defenses, claims, objections, causes of action and/or choses of action against Equity Bank with respect to the Pre-Petition Obligations, the Pre-Petition Liens or the Pre-Petition Collateral.  Further, in Paragraph 9 of the Interim Cash Collateral Order Debtors irrevocably waive and shall be prohibited from asserting any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred from the Petition Date to the Termination Date in connection with the preservation, protection or enhancement of, or realization by Equity Bank upon all or any portion of the Pre-Petition Collateral and in no event shall such parties be subject to the equitable doctrine of marshaling or any similar doctrine with respect to all or any portion of the Pre-Petition Collateral.

## V.    BASIS FOR RELIEF

**A.    Debtors' Request to Use Cash Collateral and Proposed Adequate Protection is Appropriate**

23.    Under § 363(c)(2) of the Bankruptcy Code, a debtor-in-possession may not use cash collateral without the consent of the secured party or approval from the Court upon a finding that the secured party's interest can be adequately protected.  Section 361 of the Bankruptcy Code provides a non-exhaustive list of factors that may constitute adequate protection.  A determination of adequate protection is decided on a case-by-case basis and involves a consideration of the "nature of the creditor's interest in the property, [and] the potential harm to the creditor as a result of the property's decline in value of the method of protection."  *In re Braniff Airways, Inc.*, 783 F.2d 1283, 1286 (5th Cir. 1986).

24.    Here, without authority to use the Cash Collateral of Equity Bank, Debtors will not have sufficient available sources of working capital to pay for normal operating expenses and thus will be unable to continue to operate their restaurants and shops.  Without access to the use of Cash Collateral, Debtors ability to manage, administer and preserve the Debtors' estates

would be immediately and irreparably harmed, thereby materially impairing the estates and creditors and possibility of a successful reorganization of these chapter 11 cases.

25.     The disruption in the use of Cash Collateral will adversely affect the ability of Debtors to operate and would result in the loss of employees, the diminished value of estate property including collateral securing the interests of various creditors. The use of Cash Collateral is critical to the Debtors in order to maintain operations and, in turn, revenues.

26.     The Budget provides for payment of restructuring costs, including Debtors' professionals engaged in these chapter 11 cases. As long as secured creditors are adequately protected or consent, the use of the Cash Collateral to pay Debtors' professionals is allowed. Here, Equity Bank is adequately protected and moreover, has consented to Debtors' use of Cash Collateral pursuant to the Budget and Interim Order. Debtors' use of the Cash Collateral of Equity Bank will not impact the liens or security interests of the other secured creditors, namely, Happy State Bank and JP Morgan Chase Bank.

27.     Section 361(2) of the Bankruptcy Code specifically provides that adequate protection may be provided by "providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property." 11 U.S.C. §361(2); *In re Gary L. Zars*, 434 B.R. 421, 431 (W.D. Tex. 2010) ("Adequate protection for such a creditor holding a secured interest or cash collateral would include . . . additional or replacement liens").

28.     Equity Bank is entitled, pursuant to Bankruptcy Code §§ 361 and 363(c) and (e), to adequate protection of its interests in the Prepetition Collateral, including Cash Collateral, equal to the aggregate diminution in value of its interests in the Prepetition Collateral.

Accordingly, Debtors seek to provide Equity Bank with the form of adequate protection provided in the Interim Order.

29.     For this reason, the Court should approve Debtors use of cash collateral as outlined in the Proposed Interim Cash Collateral Order.

**B.     The Automatic Stay should be Modified on a Limited Basis**

30.     The proposed Interim Order provides that the automatic stay shall be modified to i) permit the Debtors to grant Equity Bank the Adequate Protection Liens and Adequate Protection Superpriority Claims; (ii) permit the Debtors to perform such acts as Equity Bank may reasonably request to assure the perfection and priority of the liens granted herein; (iii) permit the Debtors to incur all liabilities and obligations to Equity Bank under the interim and final orders; and (iv) authorize the Debtors to pay, and Equity Bank to retain and apply, payments made in accordance with the terms of the interim and final orders.  Accordingly, the Court should modify the automatic stay to the extent contemplated in the proposed Interim Order and the Final Order.

**C.     Immediate Access to Cash Collateral is Necessary**

31.     Federal Rules of Bankruptcy Procedure 4001(b) and 4001(c) provide that a final hearing on a motion to use cash collateral or may not be commenced earlier than fourteen days after the service of such motion.  Upon request, however, the Court is empowered to conduct a preliminary emergency hearing on the motion and authorize the use of cash collateral or the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.  Debtors request that the Court conduct an emergency Interim Hearing on this motion to consider Debtors' request that the Interim Order be entered.  Debtors need to use cash collateral to pay payroll and other operating expenses.  The terms and

conditions of the Budget are fair and reasonable and reflect the exercise of Debtors' prudent business judgment consistent with the fiduciary duties of a debtor-in-possession. The cash collateral that Debtors propose to spend in the Budget will be in an amount necessary to prevent the Debtors from suffering immediate and irreparable harm. Accordingly, Debtors request entry of the Interim Order as soon as possible after a hearing to be conducted within one day of the filing of this motion.

32.     To implement the foregoing successfully, Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## VI.    NOTICE

33.     Notice of this Motion has been provided to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee for the Northern District of Texas; (ii) the Debtors' secured creditors; (iii) the twenty largest unsecured creditors of each Debtor; and (iv) certain governmental entities. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## VII.    CONCLUSION

34.     Debtors request that the Court enter an order: (i) authorizing Debtors to use cash collateral in accordance with the terms and conditions set forth in this motion, the Budget, and the proposed Interim Order; (iii) scheduling a preliminary hearing on this motion on a date that is not later than one day following the filing of this Motion (iv) scheduling a final hearing on this motion on a date that is not earlier than fourteen days following the filing of this motion; (v) waiving the notice requirements of Rule 6004(a) and the 14-day stay provided by Rule 6004(h); and (vi) granting such further relief as appropriate.

Respectfully submitted,

By: */s/ Michael A. McConnell*
    Michael A. McConnell
    Texas Bar I.D. 13447300
    michael.mcconnell@kellyhart.com
    Nancy Ribaudo
    Texas Bar I.D. 24026066
    nancy.ribaudo@kellyhart.com
    Katherine T. Hopkins
    Texas Bar I.D. 24070737
    katherine.hopkins@kellyhart.com
    KELLY HART & HALLMAN LLP
    201 Main Street, Suite 2500
    Fort Worth, Texas 76102
    Telephone:    817/332-2500
    Telecopy:    817/878-9774

    *Proposed Counsel for Debtors*

# EXHIBIT A

**Sovano, LLC**
Weekly Cash Flow Projection
For Week Ending on Sunday

Updated: 04-Jan-19

PRELIMINARY & SUBJECT TO CHANGE

| | | 1/6/2019 FRCST (1) | 1/13/2019 FRCST | 1/20/2019 FRCST | 1/27/2019 FRCST | 2/3/2019 FRCST | 2/10/2019 FRCST | 2/17/2019 FRCST | 2/24/2019 FRCST | 3/3/2019 FRCST | 3/10/2019 FRCST | 3/17/2019 FRCST | 3/24/2019 FRCST | 3/31/2019 FRCST | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DIP Financing | (1) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Beginning Cash Balance | | 15,000 | 150,717 | 24,467 | 35,463 | 42,389 | 124,155 | (51,206) | 32,660 | 13,506 | 127,969 | 13,705 | 12,168 | 16,611 | 15,000 |
| Receipts - Royalties & Allowances | (2) | 110,000 | 96,900 | 106,900 | 96,900 | 106,900 | 106,000 | 116,000 | 106,000 | 116,000 | 107,000 | 116,000 | 116,000 | 126,000 | 1,426,600 |
| Store Receipts - South Park Meadows | (2) | 25,920 | 57,557 | 57,557 | 57,557 | 58,093 | 58,093 | 58,093 | 58,093 | 70,746 | 70,746 | 70,746 | 70,746 | 70,746 | 794,694 |
| Store Receipts - Hattiesburg & Spartanbu | (3) | 20,952 | 50,894 | 50,894 | 50,894 | 60,429 | 60,429 | 60,429 | 60,429 | 71,372 | 71,372 | 71,372 | 71,372 | 71,372 | 772,213 |
| Total Available Funds | | 171,872 | 356,068 | 239,819 | 240,815 | 267,811 | 348,677 | 183,316 | 257,182 | 271,625 | 377,088 | 271,824 | 270,286 | 284,729 | 2,998,507 |
| **Expenses** | | | | | | | | | | | | | | | |
| Payroll & Benefits | (4) | 0 | 159,020 | 60,500 | 116,020 | 0 | 124,270 | 0 | 139,770 | 0 | 124,270 | 0 | 139,770 | 0 | 1,001,120 |
| Contract labor | | 0 | 6,250 | 0 | 6,250 | 0 | 6,250 | 0 | 6,250 | 0 | 6,250 | 0 | 6,250 | 0 | 37,500 |
| Rent | (5) | | | | | | | | | | | | | | 266,089 |
| Occupancy | (5) | 1,800 | | | | | | | | | | | | | 142,400 |
| Administrative | (6) | 1,800 | | | | | | | | | | | | | 203,000 |
| COGS Costs | (7) | 3,900 | | | | | | | | | | | | | 248,700 |
| Utilities | | 1,700 | | | | | | | | | | | | | 67,500 |
| Taxes | | 1,800 | | | | | | | | | | | | | 183,600 |
| Inventory | (8) | 9,000 | | | | | | | | | | | | | 261,000 |
| Insurance | | | | | | | | | | | | | | | 81,000 |
| Credit Card Fees | | 1,156 | | | | | | | | | | | | | 15,025 |
| Total Operating Expenses | | 21,156 | 331,601 | 204,356 | 198,426 | 143,656 | 315,883 | 140,656 | 243,676 | 103,656 | 316,883 | 139,656 | 243,676 | 103,656 | 2,506,934 |
| **Restructuring Costs** | | | | | | | | | | | | | | | |
| Chief Restructuring Officer | (9) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 130,500 |
| CRO Support Staff | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 232,800 |
| Financial/Legal/UST Fees & Exps | (9) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Legal Advisors | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Total Restructuring Expenses | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 363,300 |
| Interim Restructuring Payments | (9) | 0 | 0 | 0 | 0 | 0 | 84,000 | 10,000 | 0 | 40,000 | 46,500 | 120,000 | 10,000 | 52,800 | 363,300 |
| Total Cash Expenditures | | 21,156 | 331,601 | 204,356 | 198,426 | 143,656 | 399,883 | 150,656 | 243,676 | 143,656 | 363,383 | 259,656 | 253,676 | 156,456 | 2,870,234 |
| Ending Cash | | 150,717 | 24,467 | 35,463 | 42,389 | 124,155 | (51,206) | 32,660 | 13,506 | 127,969 | 13,705 | 12,168 | 16,611 | 128,273 | 128,273 |
| **Restructuring Fees Accrual / Paymer** | (9) | | | | | | | | | | | | | | |
| Chief Restructuring Officer | | 8,000 | 20,000 | 20,000 | 20,000 | 20,000 | 12,500 | 10,000 | 10,000 | 10,000 | 5,000 | 5,000 | 5,000 | 5,000 | 150,500 |
| CRO Support Staff | | 0 | 14,000 | 14,000 | 14,000 | 14,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 56,000 |
| Legal Advisors | | 10,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 13,750 | 13,750 | 13,750 | 13,750 | 265,000 |
| Expenses and UST Fees | | | | | 10,000 | | | | 10,000 | | | | | 10,000 | 30,000 |
| Total Restructuring Fees Accrual | | 18,000 | 59,000 | 59,000 | 69,000 | 59,000 | 37,500 | 35,000 | 45,000 | 35,000 | 18,750 | 18,750 | 18,750 | 28,750 | 501,500 |
| Payments | | 0 | 0 | 0 | 0 | 0 | (84,000) | (10,000) | 0 | (40,000) | (46,500) | (120,000) | (10,000) | (52,800) | (363,300) |
| Estimate of Unpaid, Accrued Fees | | 18,000 | 77,000 | 136,000 | 205,000 | 264,000 | 217,500 | 242,500 | 287,500 | 282,500 | 254,750 | 153,500 | 162,250 | 138,200 | 138,200 |

**Notes:**
(1) DIP borrowing - Not Available
(2) Includes Royalties (reduced by 5%), Mkt & Media Fund & Allowances
Store receipts
(3) Staff payroll reduced to new schedule
Store receipts
(4) Store & Corporate Rents Beginning in February, except non-debtors.
(5) Support center general expenses & travel
(6) Store operating costs
(7) Store product purchases
(8) Subject to court approval. CRO expense is paid monthly in arrears; other restructuring professional fees are paid 80% monthly in arrears, 20% holdbacks paid every 120 days; 100% of expenses paid monthly.

Unaudited Draft: Subject to Change

# EXHIBIT B

Unaudited Draft: Subject to Change

# Gigi's Cupcakes, LLC
### Weekly Cash Flow Projection
### For Week Ending on Sunday

Updated: 04-Jan-19

**PRELIMINARY & SUBJECT TO CHANGE**

| Cash Flow | Note | 1/6/2019 FRCST | 1/13/2019 FRCST | 1/20/2019 FRCST | 1/27/2019 FRCST | 2/3/2019 FRCST | 2/10/2019 FRCST | 2/17/2019 FRCST | 2/24/2019 FRCST | 3/3/2019 FRCST | 3/10/2019 FRCST | 3/17/2019 FRCST | 3/24/2019 FRCST | 3/31/2019 FRCST | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DIP Financing | (1) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Cash Balance | | 7,000 | 147,585 | 90,706 | 72,892 | 36,276 | (16,323) | 72,562 | 50,747 | 12,632 | (38,718) | 55,167 | 37,353 | 737 | 7,000 |
| **Receipts** | | | | | | | | | | | | | | | |
| Store receipts - Royalties & Allowances | (2) | 125,000 | 0 | 10,000 | 0 | 10,000 | 115,000 | 10,000 | 0 | 10,000 | 125,000 | 10,000 | 0 | 0 | 415,000 |
| Store receipts | (3) | 31,861 | 56,861 | 56,861 | 56,861 | 52,755 | 52,755 | 52,755 | 52,755 | 53,034 | 53,034 | 53,034 | 53,034 | 53,034 | 678,633 |
| Store receipts - Columbus, OH | (3) | 3,590 | 6,140 | 6,140 | 6,140 | 10,245 | 10,245 | 10,245 | 10,245 | 9,966 | 9,966 | 9,966 | 9,966 | 9,966 | 112,817 |
| **Total Available Funds** | | 167,450 | 210,585 | 163,706 | 135,892 | 109,276 | 161,677 | 145,562 | 113,747 | 85,632 | 149,282 | 128,167 | 100,353 | 63,737 | 1,213,450 |
| **Expenses** | | | | | | | | | | | | | | | |
| Payroll & Benefits | (4) | 0 | 56,000 | 28,000 | 42,000 | 16,000 | 42,000 | 28,000 | 42,000 | 16,000 | 42,000 | 28,000 | 42,000 | 16,000 | 398,000 |
| Rent | (5) | 0 | 6,763 | 0 | 0 | 62,484 | 0 | 0 | 0 | 62,484 | 0 | 0 | 0 | 0 | 131,731 |
| Occupancy | (5) | 1,400 | 7,400 | 6,400 | 6,400 | 6,400 | 6,400 | 7,400 | 6,400 | 6,400 | 7,400 | 6,400 | 6,400 | 6,400 | 81,200 |
| Administrative | (6) | 3,000 | 9,250 | 8,000 | 8,000 | 8,000 | 8,000 | 9,250 | 8,000 | 8,000 | 9,250 | 8,000 | 8,000 | 8,000 | 102,750 |
| Store Costs | (7) | 3,450 | 12,950 | 11,200 | 11,200 | 11,200 | 11,200 | 12,950 | 11,200 | 11,200 | 12,950 | 11,200 | 10,700 | 10,700 | 142,100 |
| Taxes | | | | | 12,000 | | | | 12,000 | | | | 12,000 | | 36,000 |
| Misc. | | 3,900 | 7,400 | 6,400 | 6,400 | 6,400 | 6,400 | 7,400 | 6,400 | 6,400 | 7,400 | 6,400 | 6,400 | 6,400 | 83,700 |
| Inventory | (8) | 6,500 | 18,500 | 13,500 | 12,000 | 13,500 | 13,500 | 12,500 | 13,500 | 12,250 | 13,500 | 13,500 | 12,500 | 13,500 | 168,750 |
| Insurance | | 0 | 0 | 15,699 | 0 | 0 | 0 | 15,699 | 0 | 0 | 0 | 15,699 | 0 | 0 | 47,097 |
| Credit Card Fees | | 1,615 | 1,615 | 1,615 | 1,615 | 1,615 | 1,615 | 1,615 | 1,615 | 1,615 | 1,615 | 1,615 | 1,615 | 1,615 | 21,000 |
| **Total Cash Expenditures** | | 19,865 | 119,878 | 90,814 | 99,615 | 125,599 | 89,115 | 94,814 | 101,115 | 124,349 | 94,115 | 90,814 | 99,615 | 62,615 | 1,212,328 |
| **Ending Cash** | | 147,585 | 90,706 | 72,892 | 36,276 | (16,323) | 72,562 | 50,747 | 12,632 | (38,718) | 55,167 | 37,353 | 737 | 1,122 | 1,122 |

**Notes**

- DIP Financing - Not Available
- Includes Royalties (reduced by 5%), Mkt & Media Fund & Allowances
- Store receipts
- Includes staff payroll reductions
- Rents are scheduled to begin in February.
- Support center general expenses & travel
- Store operating costs
- Store product purchases
- Store purchases
- Professional fees are included on Gatti's; UST fees due in April.

# EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SOVRANO, LLC, | § | CASE NO. 19-40067-11 |
| MR. GATTI'S, LP, | § | CASE NO. 19-40069-11 |
| GATTI'S GREAT PIZZA, INC., | § | CASE NO. 19-40070-11 |
| GIGI'S CUPCAKES, LLC, | § | CASE NO. 19-40072-11 |
| GIGI'S OPERATING, LLC, | § | CASE NO. 19-40073-11 |
| GIGI'S OPERATING II, LLC,[1] | § | CASE NO. 19-40074-11 |
| | § | |
| Debtors. | § | **(Joint Administration Requested)** |
| | § | |
| _____ | § | **Emergency Hearing Requested** |

## INTERIM ORDER AUTHORIZING THE DEBTORS TO
## USE CASH COLLATERAL OF EQUITY BANK UNDER 11 U.S.C. § 363

Upon consideration of the *Joint Emergency Motion For Entry of Interim And Final Orders*

*(I) Authorizing Debtors To Use Cash Collateral of Equity Bank, (II) Granting Adequate*

*Protection, (III) Modifying The Automatic Stay, And (IV) Setting A Final Hearing* [Docket No.

__] (the "**Motion**") filed by Sovrano, LLC, Mr. Gatti's L.P., Gatti's Great Pizza, Inc., Gigi's

Cupcakes, LLC and Gigi's Operating, LLC (each a "**Debtor**" and collectively, the "**Debtors**")[2]

for entry of an interim order (this "**Interim Order**"), pursuant to §§ 105 and 363 of title 11 of the

United States Bankruptcy Code (the "**Bankruptcy Code**"), Rules 4001 and 9014 of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Local Bankruptcy Rules of the

United States Bankruptcy Court for the Northern District of Texas (the "**Local Rules**"),

(a) authorizing the Debtors to use the Cash Collateral (*as defined below*) of Equity Bank (*as*

*defined below*) in accordance with the terms and conditions set forth herein to finance the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sovrano, LLC (1470); Mr. Gatti's, LP (0879); Gatti's Great Pizza, Inc. (6061); Gigi's Cupcakes, LLC (8356); Gigi's Operating, LLC (0621); and Gigi's Operating II, LLC (8396).

[2] For purposes of this Interim Order, the term "**Debtors**" does not include Gigi's Operating II, LLC.

operations of the Debtors' businesses, (b) waiving any applicable stay (including under Bankruptcy Rule 6004), (c) scheduling a final hearing (the "**Final Hearing**"), pursuant to Bankruptcy Rule 4001, to consider entry of a final order (the "**Final Order**") granting the Motion, and (d) granting related relief, and this Court having found that the relief granted herein is in the best interests of the Debtors, their estates and their creditors; and this Court having reviewed the Motion and having heard the evidence and statements in support of the relief requested herein at a hearing before this Court on January 4, 2018 (the "**Hearing**"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing established just cause for the relief granted herein; and after due deliberation and good and sufficient cause appearing therefore;

### IT IS HEREBY FOUND AND DETERMINED THAT:

A.      <u>Petition Date</u>. On January 4, 2019 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code thereby commencing the above-captioned bankruptcy case (the "**Case**").

B.      <u>Joint Administration Requested</u>.  The Debtors have filed a *Motion for Joint Administration* [Docket Number __], seeking consolidation of their respective estates for administrative purposes only.

C.      <u>Committee</u>. No request has been made for the appointment of a trustee or examiner, and no official committee of unsecured creditors (the "**Committee**") has yet been appointed in the Case.

D.      <u>Jurisdiction and Venue</u>. This Court has jurisdiction over this Case, the parties, and property pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28

U.S.C. § 157(b)(2). Venue of this Case is proper with this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

      E.      <u>Principal Place Business</u>. The Debtors' principal place of business is 550 Bailey Avenue, Suite 650, Fort Worth, Texas 76107.

      F.      <u>Operation of Business</u>. The Debtors continue to manage their property and operate their businesses pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

      G.      <u>Pre-petition Secured Party</u>. Equity Bank ("**Equity Bank**") is a Kansas chartered banking organization existing under the laws of Kansas and the laws of the United States and is the holder of claims against the Debtors within the meaning of § 101(5) of the Bankruptcy Code. These claims are secured and, accordingly, Equity Bank is entitled to appear and be heard upon any issue arising herein, as provided under § 109(b) of the Bankruptcy Code.

      H.      <u>Notice</u>. Notice of the Motion and the Interim Hearing has been served by the Debtors on (a) the Office of the United States Trustee for the Northern District of Texas, (b) counsel for Equity Bank, (c) the holders of the twenty (20) largest unsecured claims against each Debtor, (d) the Internal Revenue Service, (e) any persons who have filed a request for notice pursuant to Bankruptcy Rule 2002, and (f) any such other government agencies to the extent required by the Bankruptcy Rules and the Local Rules.

      I.      <u>Debtors' Acknowledgements and Stipulations</u>. In requesting use of Cash Collateral, and in exchange for and as a material inducement to Equity Bank to agree to permit the use of Cash Collateral, and subject to paragraphs 15 and 16 below, the Debtors acknowledge, represent, stipulate, and agree as follows:

          1.      <u>Credit Agreement</u>. The following constitutes the material promissory notes, security agreements, related loan documents and guaranties pertaining to the respective parties:

## GIGI'S CUPCAKES LLC

a.      Term Note dated June 28, 2018, in the original principal amount of $9,250,000 by Gigi's Cupcakes, LLC and Gigi's Operating, LLC;

b.      Term Loan Agreement dated June 28, 2018, by and between Gigi's Cupcakes, LLC and Gigi's Operating, LLC;

c.      Security Agreement dated as of June 28, 2018;

d.      Subordination Agreement dated June 28, 2018, by and among Equity Bank, Keycorp LLC and Gigi's Cupcakes LLC;

e.      Incumbency Certificate and Certificate of Chairman, Vice-Chairman and Secretary dated June 28, 2018;

f.      Certification of Beneficial Owner(s) dated June 28, 2018;

g.      UCC Financing Statement(s);

h.      Guaranty Agreement dated June 28, 2018, Kyle C. Mann as Guarantor;

i.      Guaranty Agreement dated June 28, 2018, R.J. Phillips, Jr. as Guarantor;

j.      Cross Default/Cross Collateral Agreement, dated October 18, 2018 in the principal amount of $1,070,000 by and among Equity Bank, Gatti's Great Pizza, Inc., Mr. Gatti's L.P., Sovrano, LLC, Gigi's Cupcakes, LLC Gigi's Operating, LLC, Robert J. Phillips, Jr. and Kyle C. Mann.

## GIGI'S OPERATING LLC

a.      Security Agreement dated June 28, 2018;

b.      Subordination Agreement by and among Equity Bank, Keycorp LLC and Gigi's Operating LLC;

c.      Incumbency Certificate and Certificate of Chairman, Vice-Chairman and Secretary;

d.      UCC Financing Statement(s);

e.      Guaranty Agreement dated June 28, 2018, Kyle C. Mann as Guarantor;

f.      Guaranty Agreement dated June 28, 2018, R.J. Phillips, Jr. as Guarantor.

### GATTI'S GREAT PIZZA, INC.

a.      Security Agreement dated June 28, 2018;

b.      UCC Financing Statement(s).

### MR. GATTI'S, LP

a.      Term Note dated June 28, 2018, in the principal amount of $20,250,000, by Mr. Gatti's, LP and Sovrano, LLC;

b.      Security Agreement dated June 28, 2018;

c.      Limited Guaranty Agreement dated June 28, 2018, Kyle C. Mann, Guarantor;

d.      UCC Financing Statement(s).

### SOVRANO, LLC

a.      Deed of Trust, Assignment of Leases, Security Agreements and Financing Statement dated January 4, 2016 (Mr. Gatti's, LP);

b.      Partial Release of Lien dated April 27, 2016;

c.      Term Loan Agreement dated June 28, 2018, by and between Sovrano, LLC and Mr. Gatti's, LP;

d.      Security Agreement dated as of June 28, 2018;

e.      Limited Guaranty Agreement, Robert J. Phillips, Jr., Guarantor;

f.      Subordination Agreement by and among Equity Bank, FundCorp, Inc. and Sovrano, LLC;

g.      Incumbency Certificate and Certificate of Chairman, Vice-Chairman and Secretary dated June 28, 2018;

h.      Certification of Beneficial Owners, dated September 20, 2018;

i.      UCC Financing Statement(s).

Collectively, the Notes, Loan Agreements, Certificates, UCC Financing Statements, Guaranties, Subordination Agreements, and other related loan documents set forth in this Paragraph I.1 and those otherwise related thereto, are hereinafter referred to as the "**Credit Agreement**." A true and correct copy of the Credit Agreement was entered into evidence, and copies of the Credit Agreement were made available to parties in interest at the Hearing.

2.      In addition to Equity Bank, loan agreements, notes, security agreements and other related loan documents were entered into by and between JPMorgan Chase Bank, N.A., Happy State Bank and various Debtors and/or Gigi's Operating II, LLC, as follows:

- That certain Loan Agreement, dated March 23, 2017, and Promissory Note in the amount of $340,000, by and between Happy State Bank, as lender and Gigi's Operating, LLC, and Gigi's Operating II, LLC, as borrowers.

- That certain Security Agreement dated March 23, 2017, by and among Happy State Bank and Gigi's Operating, LLC, with respect to certain property located at Gigi's Southlake, TX store location; and

- That certain Security Agreement dated March 23, 2017, by and among Happy State Bank and Gigi's Operating II, LLC, with respect to certain property located at Gigi's and Knoxville, Tennessee store location.

- That certain Loan and Security Agreement, dated July 13, 2016, and Interim Promissory Note in the maximum amount of $2,500,000, by and among **JPMorgan Chase Bank, N.A.** as lender, and **Sovrano, LLC**, as borrower and granting a security interest in certain equipment; and

- That certain Security Agreement, dated July 28, 2016, by and between JP Morgan Chase Bank, N.A. and Gatti's Great Pizza, Inc., granting a security interest in certain equipment.

3.      Pursuant to the Credit Agreement, Equity Bank provided certain credit facilities to finance the Debtors' businesses by making advances, in each case on the terms and conditions of the Credit Agreement. All "**Obligations**" (as such term is defined in the Credit Agreement) owed to Equity Bank under the Credit Agreement and the other loan documents (as defined in the Credit Agreement), including, without limitation, all such loans, financial accommodations, and other amounts owing by the Debtor to Equity Bank under, or in connection with the Credit Agreement, are hereinafter referred to as the "**Pre-Petition Obligations**."  The Pre-Petition Obligations are alleged by Equity Bank to be not less than:

| Debtor | Principal as of 12/31/18 | Accrued and Unpaid Interest as of 1/3/2019 | Late Charges as of 1/3/19 | Total Balance and Payoff as of 1/3/19 | Per diem interest from and after 1/3/19 |
|---|---|---|---|---|---|
| Gigi's Cupcakes, LLC | $9,006,962.60 | $188,516.42 | $21,722.10 | $9,217,201.12 | $2,063.6202 |
| Sovrano LLC, Gigi's Operating LLC; Great Gatti's Pizza Inc., Mr. Gatti's, LP | $19,254,509.61 | $313,681.16 | | $19,568,190.77 | $3,347.2360 |

In addition to the foregoing, as of January 2, 2019, Debtors Sovrano, LLC, Gigi's Operating, LLC, Gatti's Great Pizza Inc., and Mr. Gatti's, LP, failed to make a payment to Equity Bank in the amount of $882,400.08 and Debtor Gigi's Cupcakes, LLC failed to make a payment to Equity Bank in the amount of $434,183.16.

4.      To secure payment of the Pre-Petition Obligations, the Debtors granted Equity Bank liens and security interests (collectively, the "**Pre-Petition Liens**") in personal

property as defined in the security agreements between Equity Bank and each Debtor (collectively, the "**Pre-Petition Collateral**").

5.      The Debtors acknowledge and agree that the Pre-Petition Liens created by the Credit Agreement and any other loan documents are valid, binding, enforceable, properly perfected, non-avoidable, first priority liens on the Pre-Petition Collateral with priority over any and all other liens, security interests or other interests and are not subject to any challenge or defense, to the best of Debtors' knowledge, information and belief, including without, respectively, avoidance, reductions, set-off, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses or any other challenges of any kind under the Bankruptcy Code or any other applicable law or regulation by any person or entity.

6.      Subject to entry of a Final Order, Equity Bank shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to Equity Bank with respect to proceeds, product, offspring or profits of any of the Pre-Petition Collateral.

7.      The Debtors waive, discharge and release any rights they may have to challenge the Pre-Petition Obligations and Pre-Petition Liens on the Pre-Petition Collateral, and to assert any offsets, set-offs, recoupments, defenses, claims, objections, causes of action and/or choses of action against Equity Bank with respect to the Pre-Petition Obligations, the Pre-Petition Liens or the Pre-Petition Collateral.

8.      The payments made on account of, and amounts applied to, the Pre-Petition Obligations before the Petition Date were payments and applications of Pre-Petition Collateral.

9. All of the Debtors' cash, including the cash in its deposit accounts and other accounts, wherever located, to the extent it is original Pre-Petition Collateral or proceeds thereof, constitutes Cash Collateral of Equity Bank. For purposes of this Interim Order, the term "**Cash Collateral**" shall mean and include all "cash collateral," as defined in § 363 of the Bankruptcy Code, in or on which Equity Bank has a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests), and shall include, without limitation: (a) all cash proceeds arising from the collection, sale, lease, or other disposition, use or conversion of any of the Debtors' property, insurance policies, or in or on which Equity Bank has a lien or a replacement lien, whether as part of the Pre-Petition Collateral or pursuant to an order of this Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of this Case, or arose or was generated thereafter; (b) all of the respective deposits, refund claims and rights in retainers of the Debtors on which Equity Bank has a lien or replacement lien, whether as part of the Pre-Petition Collateral or pursuant to an order of this Court or applicable law or otherwise; and (c) the proceeds of any sale of Pre-Petition Collateral. Notwithstanding anything to the contrary, Cash Collateral shall not include any cash traceable to Gigi's Operating II, LLC (or any other non-debtor entity) or cash subject to a valid and perfected lien, if any, held by Happy State Bank or JP Morgan Chase, N.A.

10. Equity Bank is not a control person or insider of any Debtor by virtue of any of the actions taken or to be taken in respect of or in connection with the Pre-Petition Obligations.

J.      _Entitlement to Adequate Protection_. Equity Bank is entitled, pursuant to sections 361, 362(c)(2), 363(e) and 364(d)(l) of the Bankruptcy Code, to adequate protection of its interest in the Pre-Petition Collateral, including the Cash Collateral.

K.      _Need for Use of Cash Collateral_. The Debtors require use of Cash Collateral to preserve the value of Debtors' businesses, satisfy payroll obligations and other necessary working capital and general corporate purposes of the Debtors consistent with the Budget (*as defined below*) attached hereto as **Exhibit A and B**, and pay necessary and reasonable fees incurred in connection with this Case. If the Debtors do not obtain authorization to use Cash Collateral, the Debtors, and their estate, will suffer immediate and irreparable harm. The use of the Cash Collateral is therefore of the utmost significance and importance to the preservation and maintenance of the value of the Debtors and their estates.

L.      _Consent to Use Cash Collateral_. Equity Bank consents to the use of Cash Collateral in accordance with the Budget; *provided*, *however*, that (1) such consent is expressly conditioned upon the entry of this Interim Order, (2) such consent shall not be deemed to extend to any debtor-in-possession financing, (3) such consent shall not be deemed a basis to deny or impair Equity Bank's entitlement to adequate protection, and (4) such consent shall be of no force and effect in the event this Interim Order is not entered or is vacated or modified in any respect without the consent of Equity Bank.

M.      _Good and Sufficient Cause Shown_. Good cause has been shown for the entry of this Interim Order. The ability of the Debtors to obtain sufficient working capital and liquidity through the use of Cash Collateral is vital to the Debtors' estates and creditors.  Use of Cash Collateral will enable the Debtors to preserve the value of their estates. Among other things, entry of this Interim Order is necessary to maximize and stabilize the value of the Debtors' assets and to

avoid immediate and irreparable harm to the Debtors and their estates, and, accordingly, is in the best interests of the Debtors, their estates and its creditors.

N.      <u>Good Faith</u>. This Interim Order has been the subject of extensive negotiations conducted in good faith and at arm's length between and among the Debtors and Equity Bank. Any financial accommodations made to the Debtors by Equity Bank pursuant to this Interim Order shall be deemed to have been extended by Equity Bank in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and Equity Bank shall be entitled to all protections and benefits afforded thereby.

O.      <u>Immediate Entry of Interim Order</u>. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2). The permission granted herein to use the Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors. This Interim Order shall not be stayed and shall be valid and fully effective immediately upon entry, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014, or otherwise, and the Clerk of this Court is hereby directed to enter this Interim Order on this Court's docket in this Case.

P.      Based upon the foregoing stipulations, and upon the record made before this Court at the Hearing, and good and sufficient cause appearing therefor, this Court concludes that entry of this Interim Order is in the best interests of the Debtors' estates and creditors. Based upon the foregoing stipulations, and upon the record made before this Court at the Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      The Motion is GRANTED, on an interim basis, as set forth herein.

2. Based on the record presented to this Court at the Interim Hearing, the terms of the Debtors' proposed use of the Cash Collateral are fair and reasonable, and reflect the exercise of prudent business judgment by the Debtors and their respective officers and directors consistent with their fiduciary duties.

3. The Debtors are authorized to use Cash Collateral during the period from the Petition Date through and including the Termination Date (*as defined below*) subject to and solely in accordance with the terms, conditions, and limitations set forth in this Interim Order and the Budget, without further approval by this Court; *provided* that (a) all use of cash by the Debtors shall be deemed to be made first from any cash that is not Cash Collateral and thereafter from the Cash Collateral and (b) neither the Debtors nor any other party in interest (including any party in interest that is granted standing by this Court pursuant to paragraphs 15 and 16 below) shall be authorized to use the Cash Collateral for any purpose relating to or in furtherance of an Adverse Lender Action (*as defined below*), including without limitation the payment of professional fees relating to such matters. "**Adverse Lender Action**" means any assertion, claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter: (i) challenging the legality, validity, or enforceability of the Credit Agreement and other loan documents; (ii) challenging the legality, validity, priority or enforceability, or seeking to invalidate, set aside, avoid or subordinate, in whole or in part, any Pre-Petition Lien; or (iii) seeking to prevent, hinder or delay the assertion or enforcement by Equity Bank of any right, remedy, claim, benefit or privilege of, or lien or interest in favor of Equity Bank in the Pre-Petition Collateral or realization upon any of the Pre-Petition Collateral. The Budget may be modified provided that the Debtors obtain the written consent of Equity Bank, without further order of this Court, upon the filing of a copy of the modified Budget with this Court and each

such Budget shall be referred to herein as a "**Budget**". The Debtor's use of Cash Collateral may vary weekly by 10% on any line item basis (other than with respect to the amounts set forth in the Budget for taxes and utility expenses which the Debtors are authorized to pay in full in the amount reflected on any bill for taxes or utility services incurred); *provided* that the Debtors' use of Cash Collateral on an aggregate basis does not vary from the aggregate amount authorized in the Budget.

4. Equity Bank has agreed to a Carve-Out of its Pre-Petition Collateral in an amount equal to the sum of (a) all fees required to be paid to the clerk of the Court or any claims and noticing agent acting in such capacity and to the Office of the U.S. Trustee under section 1930(a)(6) of title 28 of the United States Code and (b) allowed claims for unpaid fees, costs, and expenses (the "**Allowed Fees**") of the Debtors' professional fees to include Cash Collateral in the amount of: (i) $300,000 subject to Court approval under 11 U.S.C. § 330 for fees and expenses incurred by counsel for the Debtor (Kelly Hart LLP) and its restructuring advisor (CR3 Partners LLC) for services beginning on the Petition Date and rendered up through and including the earlier to occur of (x) the Termination Date (*as defined below*) and (y) entry by this Court of an additional interim or final order authorizing use of Cash Collateral (the "**Carve-Out**"). All such payments shall be subject to the provisions of 11 U.S.C. § 327, 11 U.S.C. § 329 and 11 U.S.C. § 330. Notwithstanding anything to the contrary in this Interim Order or any subsequent interim or final order relating to use of Cash Collateral, the Carve-Out (including any amendment or modification thereto) shall be reduced dollar-for-dollar by such of Debtors' post-petition net cash deemed by the Court not to be proceeds of the Pre-Petition Collateral.

5. Subject to the Carve-Out, the consent of Equity Bank to the Budget shall not be construed as a commitment to permit the use of Cash Collateral after the occurrence of an Event

of Default (*as defined below*), regardless of whether the aggregate funds shown on the Budget have been expended after the date of default.

6.      Except in the ordinary course of business or as expressly authorized by an order of this Court, and in either case, only as set forth in the Budget, as applicable, the Debtors shall not make any advances to any person or entity including, without limitation, any affiliate of the Debtors.

7.      Any amendments, supplements, or modifications to the Budget must be consented to in writing by Equity Bank, prior to the implementation thereof, and shall not require further notice, hearing, or court order. Nothing herein shall prevent the Debtors and Equity Bank from authorizing the use of Cash Collateral for additional expenses upon such other terms and conditions as may be mutually agreed upon.

8.      Equity Bank (a) may assume the Debtors will comply with the Budget, (b) shall have no duty to monitor such compliance, and (c) shall not be obligated to pay (directly or indirectly from the Pre-Petition Collateral or otherwise) any unpaid expenses incurred or authorized to be incurred pursuant to the Budget, except as required by this Interim Order.

9.      Upon the entry of the Final Order, the Debtors shall irrevocably waive and shall be prohibited from asserting any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred from the Petition Date to the Termination Date in connection with the preservation, protection or enhancement of, or realization by Equity Bank upon all or any portion of the Pre-Petition Collateral and in no event shall such parties be subject to the equitable doctrine of marshaling or any similar doctrine with respect to all or any portion of the Pre-Petition Collateral**.**

10. As adequate protection for the use of Cash Collateral, Equity Bank is hereby granted adequate protection as follows:

(i) <u>Replacement Liens</u>. Subject to any otherwise unavoidable and duly perfected liens existing on the Petition Date, Equity Bank is hereby granted continuing, valid, automatically perfected nonavoidable and enforceable replacement liens (the "**Replacement Liens**"), in and upon all of the assets (and proceeds thereof) of the Debtors described in the Credit Agreement and the other loan documents including but not limited to, accounts receivable, and Cash Collateral, whether such property (or proceeds thereof) was owned on the Petition Date or acquired by any Debtor after the Petition Date (excluding all causes of action under chapter 5 of the Bankruptcy Code (the "**Avoidance Actions**"). The Replacement Liens granted herein: (a) are in addition to the Pre-Petition Liens; (b) are and shall be valid, perfected, enforceable, and effective as of the date of the entry of this Interim Order without further action by the Debtors or Equity Bank, and without the necessity of the execution, filing, or recordation of any financing statements, security agreements, mortgages, or other documents; (c) shall secure the payment of indebtedness to Equity Bank to the fullest extent of the law, of the Cash Collateral and any other Pre-Petition Collateral; and (d) except for *ad valorem* property taxes, shall not hereafter be subordinated to or made *pari passu* with any other lien or security interest arising after the Petition Date under Bankruptcy Code section 364(d) or otherwise, absent the consent of Equity Bank. The Replacement Liens shall have the same priority as existed on the Petition Date. If, however, Equity Bank, in its sole discretion, shall determine to file any such financing statements, mortgages, notices of lien or similar instruments, or to otherwise confirm perfection of such Replacement Liens, the automatic stay is hereby

lifted to allow the filing and recording of a certified copy of this Interim Order or any such financing statements, mortgages notices of lien or similar instruments, and all such documents shall be deemed to have been filed or recorded on the date of this Interim Order.

(ii)      Adequate Protection Superpriority Claims. As further adequate protection of the interests of Equity Bank in the Pre-Petition Collateral against any diminution in value of such interests caused by a failure of adequate protection under § 507(b) of the Bankruptcy Code, Equity Bank is hereby granted, subject to the Carve-Out, as and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each Debtor's Case and any Successor Cases (the "**Adequate Protection Superpriority Claims**").

(iii)      Priority of the Adequate Protection Superpriority Claims. Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever; *provided, however*, that the Adequate Protection Superpriority Claims shall be subject to the Carve-Out. Notwithstanding any provisions of the Interim Order, no Adequate Protection Liens shall attach to, and no Adequate Protection Superpriority Claims shall be recoverable from avoidance actions unless otherwise ordered by this Court.

(iv)      Payment of Equity Bank Costs and Expenses. All reasonable out-of-pocket costs and expenses of Equity Bank, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees and disbursements, financial advisory fees, fees and expenses of other consultants, indemnification and

reimbursement obligations with respect to fees and expenses, and other out of pocket expenses, whether or not contained in the Budget and without limitation with respect to the dollar estimates contained in the Budget (provided, however, that such overages shall not weigh against the Debtors in any testing related to compliance with the Budget), shall be subject to a determination of secured status by the Court under § 506(a) of the Bankruptcy Code.

(v)        Reporting.  Debtors shall timely provide Equity Bank, the Committee, if appointed, and the U.S. Trustee with (a) (i) a current accounts receivable ledger, (ii) a current accounts payable ledger (iii) a monthly report comparing actual collections and expenditures (by expense category) on a cash basis to those set forth in the Budget (a "**Reconciliation Report**"); and (iv) monthly financial statements to be delivered to Equity Bank not later than twenty (20) days after the conclusion of each month in which any Debtor uses Cash Collateral, (b) all documents and information submitted by Debtors to the United States Trustee, and (c) upon the reasonable request of Equity Bank, such other information pertaining to each Debtor's operations, financial affairs, and the Pre-Petition Collateral.

(vi)        Access to Collateral.  Upon the request of Equity Bank, the Debtors shall permit Equity Bank, respectively, reasonable access to the Pre-Petition Collateral and each Debtor's books and records to conduct inspections and audits.

(vii)        Successor Case.  The adequate protection granted to Equity Bank in this order, including without limitation the Replacement liens, shall be enforceable against the Debtors, their estates, and any successors thereto, including without limitation, any trustee or other estate representative appointed in this Chapter 11 case, any case under Chapter 7

of the Bankruptcy Code upon a conversion, or in any other proceeding superseding or related to any of the foregoing (collectively, the "**Successor Case**").

(viii) No Avoidance of Adequate Protection Payments or Replacement Liens. Subject to paragraphs 15 and 16, the payments to Equity Bank authorized in this Interim Order and the Replacement Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code and shall not be subject to subordination, impairment, or avoidance for all purposes in this Case and any Successor Case.

11. From the Petition Date to the Termination Date, the Debtors shall not in any way prime Equity Bank's Pre-Petition Liens by offering a subsequent lender or any party-in-interest (including any party-in-interest which may file an administrative expense claim) a superior or *pari passu* lien or claim with respect to the Pre-Petition Collateral pursuant to section 364(d) of the Bankruptcy Code, or otherwise.

12. The Debtors' right to use the Cash Collateral on a consensual basis pursuant to this Interim Order shall terminate (the date of any such termination, the "**Termination Date**") on the earliest of the following: (a) consummation of a plan of reorganization in this Case; (b) February 6, 2019, if the Final Order has not been entered by this Court on or before such date or such later date as Equity Bank may agree; or (c) in the event of a federal government shut-down which causes the unavailability of courts, two weeks from the end of such shut-down; or (d) upon written notice by Equity Bank to the Debtors after the occurrence and continuance of any of the following events ("**Events of Default**") beyond any applicable grace period:

(i) Failure of the Debtors to comply in any material respect with the terms of this Interim Order and such failure continues without remedy for more than five (5) business days after written notice thereof is provided to the Debtors as required herein;

(ii)     Granting, creating, incurring or suffering to exist by any Debtor any liens or security interests other than: (A) those granted pursuant to this Interim Order; (B) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business for amounts outstanding as of the Petition Date, even if recorded after the Petition Date; (C) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (D) deposits to secure the payment of any post-petition statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business; and (E) any other liens or security interests that are junior to the Pre-Petition Liens and that a Debtor is permitted to incur under the Credit Agreement;

(iii)     Entry of any order reversing, amending, supplementing, staying, vacating or otherwise modifying this Interim Order without the written consent of Equity Bank.

(iv)     Entry of an order granting relief from the automatic stay to the holder or holders of any security interest (other than Equity Bank) to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any material assets of any Debtor;

(v)     From the Petition Date to the Termination Date, the creation of any claims or charges, or the entry of any order of this Court authorizing any claims or charges, other than as permitted under this Interim Order, entitled to superpriority under section 364(c)(1) of the Bankruptcy Code *pari passu* or senior to the Pre-Petition Obligations, or there shall arise or be granted by this Court (A) any claim having priority over any or all administrative expenses of the kind specified in clause (b) of section 503 or clause (b) of section 507 of the Bankruptcy Code, including the 507(b) Claims, or (B) any lien on the Pre-Petition Collateral or Post-Petition Collateral having a priority senior to or *pari passu*

with the liens and security interests granted herein, except as expressly provided in the Credit Agreement or in this Interim Order (but only in the event specifically consented to by Equity Bank), whichever is in effect;

(vi) Any filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the Pre-Petition Liens securing the Pre-Petition Obligations or asserting any other cause of action against and/or with respect to the Pre-Petition Obligations, the Pre-Petition Collateral, or Equity Bank (or if the Debtor supports any such motion, pleading, application or adversary proceeding commenced by any third party);

(vii) Commencing, joining, assisting or otherwise participating as an adverse party by any Debtor or any of its subsidiaries or affiliates in any suit or other proceeding against Equity Bank relating to the Pre-Petition Obligations;

(viii) Dismissing or converting this proceeding to a Chapter 7 case, or appointing a Chapter 11 Trustee with plenary powers, a responsible officer, or an examiner with enlarged powers relating to the operation of the businesses of the Debtors (powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code); *provided* that the appointment by this Court of a trustee or other fiduciary of any Debtor's estate for the limited purpose of investigating, commencing or prosecuting Avoidance Actions on behalf any Debtor's estate shall not constitute a default under this subparagraph;

(ix) Terminating or reducing by the Court the period pursuant to section 1121 of the Bankruptcy Code during which any Debtor has the exclusive right to file a plan or plans and solicit acceptances thereof.

13.     If any Debtor defaults under the terms of this Interim Order, the Debtors are entitled to written notice. Notice shall be sent to proposed counsel for the Debtor, Kelly Hart LLP, 201 Main Street, Suite 2500, Fort Worth, Texas 76102 (Attn: Michael A. McConnell, Esquire) and counsel for the Committee, if appointed.  If the default is not cured within five (5) business days from the date such notice is provided, the Debtors' authority to use Cash Collateral under the terms of this Interim Order shall automatically terminate.

14.     Subject to paragraphs 15 and 16, each Debtor on behalf of itself and each of its successors and assigns, including a chapter 7 trustee, has stipulated and is hereby deemed:  (a) to release and discharge Equity Bank, in its respective capacity as such, together with each of its respective agents, attorneys, employees, heirs, executors, administrators, officers, directors, successors and assigns, from any and all claims, causes of action and remedies (whether under the Bankruptcy Code or other applicable law) arising out of, based upon or related to the Pre-Petition Obligations, the Pre-Petition Liens or the Pre-Petition Collateral; and (b) to waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, amount and nonavoidability (under the Bankruptcy Code or otherwise) of the Pre-Petition Obligations and the Pre-Petition Liens upon the Pre-Petition Collateral, "**lender liability**" claims and causes of action, any Avoidance Actions or any other claims and causes of action.   The stipulations, releases and waivers set forth in this paragraph and in any other paragraph of this Interim Order are deemed effective upon the date of entry of this Interim Order, but are expressly without prejudice to the rights of any Committee or any other party with standing to challenge the validity of the liens and claims asserted by Equity Bank, or otherwise seek to prosecute claims held by the Debtor's estate(s) against Equity Bank, in accordance with and subject to the provisions of Paragraph 16 below.

15.     As a result of the Debtors' review of the Credit Agreement and other loan documents and the facts related thereto, each Debtor has made certain agreements and acknowledgments as set forth in paragraphs I(1)-(8) above and shall have no right to file a complaint pursuant to Bankruptcy Rule 7001 or otherwise, or any other pleading asserting a claim or cause of action arising out of or related to the Credit Agreement and other loan documents or any transactions or course of conduct related thereto. Each Debtor's acknowledgements and stipulations set forth in paragraphs I(1)-(9) above (the "**Debtors' Stipulations**") became binding upon each Debtor in all circumstances upon entry of this Interim Order.   The Debtors' Stipulations shall be binding upon each other party in interest, including the Committee (or if no Committee is formed, any party in interest granted standing by this Court prior to the expiration of the Challenge Period), unless the Committee (or such party in interest granted standing) commences, not later than the earlier of seventy-five (75) days following the Petition Date or sixty (60) days following the formation of the Committee, or such later date as Equity Bank agrees in writing to grant to such parties in interest (such time period shall be referred to as the "**Challenge Period**," and the date that is the next calendar day after the expiration of the Challenge Period in the event that either (a) no Challenge (*as defined below*) is properly raised during the Challenge Period or (b) with respect only to a properly filed Challenge, such Challenge is fully and finally adjudicated, shall be referred to as the "**Challenge Period Termination Date**")), (i) a contested matter, adversary proceeding, or other action or "claim" (as defined in the Bankruptcy Code) challenging or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtors' Stipulations, or (ii) a contested matter, adversary proceeding, or other action against any Pre-Petition Secured Party in connection with or related to (A) the Pre-Petition Obligations, (B) the pre-petition business relationship between or conduct of any of the

Pre-Petition Secured Party with each Debtor, (C) the actions or inactions of the Pre-Petition Secured Party arising out of or related to the Pre-Petition Obligations or otherwise, including, without limitation, any claim against the Pre-Petition Secured Party in the nature of an "equitable subordination," "lender liability," "deepening insolvency" or "control person" liability, (D) any setoff, offset, recoupment, counterclaim, or defense to the Pre-Petition Obligations (including, but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code), or (E) any Avoidance Action ((i) and (ii) collectively, the "**Challenges**" and, each individually, a "**Challenge**"), and second, obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action.

16.     In the event that a chapter 7 trustee or a chapter 11 trustee is appointed during the Challenge Period, the trustee's Challenge Period shall be the later of the Challenge Period provided for in the Interim Order, or sixty (60) days from the appointment of a trustee provided such appointment occurs prior to expiration of the Challenge Period.

17.     Upon the Challenge Period Termination Date and for all purposes in this Case and any Successor Case, (a) all payments  made to or for the benefit of the Pre-Petition Secured Party pursuant to, or otherwise authorized by, this Interim Order or otherwise (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, or avoidance, (b) any and all such Challenges by any party in interest shall be deemed to be forever released, waived, and barred, (c) the Pre-Petition Obligations shall be deemed to be a fully allowed secured claim within the meaning of section 506 of the Bankruptcy Code (which claim and liens shall have been deemed satisfied in full by the repayment of the Pre-Petition Obligations), (d) the Pre-Petition Obligations shall be deemed to

be a fully allowed claim, and (e) the Debtors' Stipulations and the releases in paragraphs I(1)-(8) shall be binding on all parties in interest, including the Committee or any trustee appointed in this Case or any Successor Case.

18. _Adequate Protection Reservation_. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to Equity Bank hereunder is insufficient to compensate for any diminution in _value_ of its interests in the Pre-Petition Collateral during the Case or any Successor Cases.

19. _Modification of Automatic Stay_. The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (i) permit the Debtors to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims; (ii) permit the Debtors to perform such acts as Equity Bank may reasonably request to assure the perfection and priority of the liens granted herein; (iii) permit the Debtors to incur all liabilities and obligations to Equity Bank under this Interim Order; and (iv) authorize the Debtors to pay, and Equity Bank to retain and apply, payments made in accordance with the terms of this Interim Order.

20. Upon entry of this Interim Order by this Court, the terms of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, Equity Bank, all other creditors of the Debtors, any Committee, and all other parties in interest and their respective successors and assigns, including, without limitation, any trustee or any fiduciary hereafter appointed in this Case, any Successor Case, or upon dismissal of this Case or Successor Case.

21. The terms and conditions of this Interim Order and any actions taken pursuant hereto shall survive entry of an order which may be entered: (a) confirming any plan of reorganization in the Case; (b) converting this Case to a case under Chapter 7 of the Bankruptcy

Code; (c) dismissing this Case or any Successor Case; or (d) pursuant to which this Court abstains from hearing any of this Case or Successor Case.

22. If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity of any adequate protection obligations owing to Equity Bank incurred prior to the actual receipt by Equity Bank, as applicable, of written notice of the effective date of such reversal, modification, vacation or stay, or (ii) the validity or enforceability of any claim, lien, security interest or priority authorized or created hereby. Notwithstanding any such reversal, modification, vacation or stay, any use of Pre-Petition Collateral, including Cash Collateral or adequate protection obligations owing to Equity Bank by any Debtor prior to the actual receipt by Equity Bank, as applicable, of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Interim Order, and Equity Bank shall be entitled to all of the rights, remedies, protections and benefits granted under section 364(e) of the Bankruptcy Code and this Interim Order with respect to all uses of Collateral, including Cash Collateral, and the adequate protection obligations owing to Equity Bank

23. The failure or delay by Equity Bank to exercise any rights and remedies under this Interim Order shall not constitute a waiver of any of the rights of such party hereunder, thereunder or otherwise, and any single or partial exercise of such rights and remedies against the Debtor or any collateral shall not be construed to limit any further exercise of such rights and remedies.

24. This Court hereby expressly retains jurisdiction over all persons and entities, to enforce the terms of this Interim Order and to adjudicate any and all disputes in connection herewith.

25.     The Final Hearing on the Motion shall be held on _____, 2019, at__:__ _.m., prevailing Central Time.  Any objections or responses to entry of a Final Order on the Motion shall be filed on or before 4:00 p.m., prevailing Central Time, on _____, 2019, and shall be served on:  (a) the Debtor, [_____], Attn:[_____]; (b) proposed counsel to the Debtor, Kelly Hart, 201 Main Street, Suite 2500, Fort Worth, Texas 76102 (Attn: Michael A. McConnell, Esquire, (c) counsel to any statutory committee appointed in this Case; (e) counsel to Equity Bank, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Suite 3600, Dallas, Texas 75201 (Attn: Toby L. Gerber, Esquire) and Hinkle Law Firm LLC, 1617 North Waterfront Parkway, Suite 40, Wichita, Kansas 67206-6639 (Edward J. Nazar, Esquire); and (f) the Office of the United States Trustee for the Northern District of Texas, Earle Cabell Federal Building, 1100 Commerce Street, Room 976, Dallas, Texas 75242 (Attn: Lisa L. Lambert, Assistant United States Trustee).  In the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the Final Hearing.

***************************** END OF ORDER *****************************